## Case No. 10,768.

PARMLEY v. ST. LOUIS, I. M. & S. R. CO. PAUL v. PACIFIC R. CO. BAILEY v. ATLANTIC & P. R. CO. ST. JOHN v. MISSOURI, K. & T. RY. CO. COURTRIGHT v. CLARK et al.

[3 Dill. 25.] [1]

Circuit Court, E. D. Missouri. 1874.

JURISDICTION OF EQUITY TO RESTRAIN COLLECTION OF TAXES—TERMS OF INTERFERENCE.

1. The nature and extent of the jurisdiction of a court of chancery to enjoin the collection of taxes, considered by Miller, Circuit Justice.

2. A distinction, on principle and policy, suggested between enjoining local or municipal taxes, and taxes levied by the state for purposes of general revenue.

3. A court of the United States will proceed with great caution in restraining the collection of the ordinary revenues of a state.

[Cited in Moore v. Holliday, Case No. 9,765.]

4. The court laid down the following principles as those which would hereafter govern it in respect to restraining the collection of taxes, viz: that whenever a party comes into this court to enjoin the collection of taxes, or the collection of part of a tax, if there is any part which he admits to be due or just, or which the court can see in the statement made in the bill ought to be paid, there must be an allegation in the bill conforming to the fact that he has paid it, or tendered it; and it is not a sufficient allegation to come and say that he is willing, or even that he has paid it into the court, because the state is not to be stayed in its revenue, which is admitted to be due, in that way; and a party claiming that he will not pay his taxes, or any portion of them, cannot screen himself during the course of a long litigation from paying that which must be paid, or ought to be paid, by setting up a contest over that which is doubtful, and which may, or may not, be necessary to be paid.

5. The specific exemption from taxation claimed by the Missouri Pacific Railroad and by the Atlantic and Pacific Railroad, under section 12 of the act of December 25, 1852, is not well founded.

[See Bailey v. Atlantic & P. R. Co., Case No. 732.]

[These were bills in equity by Duncan S. Parmley against the St. Louis, Iron Moun-

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

tain & Southern Railroad Company; Amos Paul against Pacific Railroad Company; Ozias Bailey against Atlantic & Pacific Railroad Company; Frederick St. John against Missouri, Kansas & Texas Railway Company, and Milton Courtright against Clark, state auditor, and others.]

These are the cases above reported, and at the September term, 1874, they came before the court (Miller and Dillon, JJ., and by their request Treat, J., sat at the argument).

The bills, as amended, in the several cases, in substance, set forth and allege that an illegal and excessive assessment of state, county, and municipal taxes has been made for the year 1873, in consequence of an excessive and exorbitant valuation of the property of all the railroad companies, alleged to have been illegally and improperly made by the state board of equalization, without jurisdiction.

The bills specifically charge that the members of the board were actuated by passion and prejudice, and that "in violation of the constitutional provisions requiring equal taxation in proportion to value, and intending to discriminate against railroad property," "knowingly and intentionally required such property to pay one-third more taxes in proportion to its value than other property of equal value." In the assessment of the St. Louis, Iron Mountain, and Southern Railroad, it is charged that, without evidence, the board fixed the value of the road at $6,268,334, and this sum it is alleged, is more than three times the actual cost value of the road. That in 1872 the board fixed the value of the property at $2,111,435.

It is also alleged that the state board of equalization referred to a committee of five members the taking of all evidence, as to the value of the property of the road, and that the attorneys and representatives of the road were only permitted to appear and be heard before this committee, and not before the whole board, and that the evidence, when so taken by the committee, was ordered by the board to be reduced to writing and reported to the board. Yet in many instances the evidence was not taken down, and it is alleged "that not a single statement which was reduced to writing was reported to the board, nor was there ever any report to the board of any evidence before the committee, or even of the facts which the committee believed to have been established by the evidence."

Similar allegations as to excessive valuation and alleged irregularities are made in each of the bills, as also the allegation that two of the members of the board were not sworn; that the lieutenant governor, although by law a member of the board, was not permitted to vote. And, in addition to these common grounds of complaint as to the action of the state board of equalization in fixing the value of the railroad property, there are special grounds of relief set forth in several of the bills not common to all. These special grounds are:

1. In the case of the Atlantic and Pacific Railroad Company, a total exemption is claimed from all state, county, and municipal taxes for the year 1873, under the provisions of the 12th section of the act of December 25, 1852, which provides that "the said Southwest Branch Railroad shall be exempt from taxation until the same shall be completed and in operation and shall declare a dividend. * * * Provided, that if said company shall fail for a period of two years after said road shall be completed and put in operation to declare a dividend, then said company shall be no longer exempt from the payment of said tax." It is alleged that the company did not complete its road until May, 1871, and that no dividend has been declared.

2. In the case of the Missouri Pacific, a perpetual exemption is claimed from all county, municipal and other local taxation under the provisions of the 12th section of the act of December 25, 1852.

3. In the cases of the Missouri Pacific Railroad and the Missouri, Kansas, and Texas Railway Company, it is alleged that the Pullman palace cars, used on their respective roads, have been erroneously assessed as property of the railway company; and in the case of the Chicago and Southwestern Railroad Company it is claimed that rolling stock of several hundred thousand dollars in value, belonging to the Rock Island and Pacific Railroad, has been erroneously assessed as the property of the Southwestern Railway Company.

4. There is also contained in each of the several bills an allegation that the several officers of the state, counties and municipalities are about to proceed to enforce, by commencement of suits and seizure of property, the payment of the taxes assessed, and that unless restrained irreparable injury will result. It is further alleged "that after the said illegal and unauthorized assessment was made, your orators, applied to and demanded of said railroad company, its board of directors and the defendants composing said board, that they should at once institute proceedings in the proper courts to prevent the collection of said taxes and the waste of said property, and to have said assessment and levy of said taxes set aside and annulled; but said company, its directors, officers, and managers have, and do refuse so to do, or to take any action whatever in the premises, and have declared their intention not to resist the collection of said taxes, although they well know that said taxes are unjust, illegal, and unauthorized by law."

The answers filed in the several cases, verified by affidavits, deny that any illegal or excessive assessment has been made against the railroad property of the several companies for state, county, or municipal purposes, for the year 1873, in consequence of any ex-

cessive valuation, and deny that the state board of equalization made an illegal or improper assessment and aver that the assessment, as made by the board, was a just and equitable assessment, and properly made.

The several answers deny that the members of the board of equalization were actuated by passion, prejudice, or by any improper motives, or that they intended to discriminate, or did discriminate, as against railroad property, or that they disregarded the provisions of the constitution in this regard, or that either knowingly or intentionally, or otherwise, they required such property "to pay one-third more taxes, in proportion to its value, than other property of equal value," as alleged. And it is denied that the board fixed the value of the St. Louis, Iron Mountain, and Southern Railway property without evidence, and allege the fact to be that the valuation was made upon a careful examination and full information as to all the facts, as well as the sworn testimony of witnesses produced, sworn and examined, and whose testimony was reduced to writing for the use and information of the board; and it is denied that the valuation, as fixed, of $6,268,334, is three times the value of the road. On the contrary, it is averred that the actual value of the road is largely in excess of this sum.

1. As to the special exemption from taxation claimed by the Atlantic and Pacific Railroad, it is in the answer denied that the Atlantic and Pacific Railroad is exempted from taxation under the provisions of the 12th section of the act of December 25, 1852, and it is alleged that in 1866 all the rights, property, and franchises of the Southwest Branch of the Pacific Railroad became and were forfeited to the state of Missouri, and the property and franchises granted by the act of December 25, 1852, and other acts amendatory thereof, which took possession of and run the same for some time, when the state, as sole owner, sold the same to one John C. Fremont, on certain terms and conditions, which said Fremont on his part failed to keep and perform, and the said road, its property and franchises, again reverted to and vested in the state of Missouri, and that all the title that was ever vested in the South Pacific Railroad Company (from whom the Atlantic and Pacific Railroad claim title) in and to said property, was by virtue of an act of the legislature, approved March 17th, 1868. It is further shown that on the 8th of April, 1865, a new constitution of the state of Missouri was adopted, and the exemption of property from taxation by the legislature prohibited. It is therefore averred that the legislature, at the time of passing the act under the provisions of which the road claims title, had no power to exempt the property from further taxation, neither by the terms of that act did they assume or attempt so to do; and by the provisions of the act of March 15th, 1871, entitled "An act to author-

ize the South Pacific Railroad Company to merge in and consolidate with the Atlantic and Pacific Railroad Company," it was provided that such consolidated company should "be subject to all the duties, liabilities, obligations and provisions of the general laws of the state governing railroad companies."

2. The special claim of exemption made by the Missouri Pacific Railroad from county, municipal and other local taxation, under the provisions of the 12th section of the act of December 25, 1852, is denied. And it is claimed that the construction now contended for on behalf of the road, of the section referred to, is erroneous.

3. The errors of assessment of the Pullman palace cars is denied, and the liability of the railroad company for the taxes thereof is claimed to be perfect, and that the company is bound to pay taxes thereon.

4. And as to the pretended demand of the stockholders, and refusal of the companies to institute proceedings in the proper courts to prevent the collection of said taxes, "respondents deny that the complainants, or any one for them, demanded of said railroad company, its board of directors and the defendants composing said board, or any of them, that they should institute proceedings in the courts to prevent the collection of said taxes, and to have the assessment of levy and said taxes set aside and annulled, and respondents allege that any such pretended demand and refusal, if made, was not in good faith, but was a mere subterfuge for the purpose of giving to the United States courts jurisdiction in the premises."

Motions were made in behalf of the state and the various counties and cities to dissolve the temporary injunctions which had been allowed by the circuit judge, as appears in the report of the preceding cases [Cases Nos. 10,767 and 732].

H. Clay Ewing, attorney general of Missouri, Frank J. Bowman and Britton A. Hill, for the motions.

Mr. Baker, Mr. Low, Mr. Shankland, Mr. Clover, and Mr. Dryden, contra.

MILLER, Circuit Justice (orally). I will proceed to state what conclusions the court has come to in regard to the suits to enjoin the state and counties from collecting taxes of railroads, which have been argued before us for the last three days.

The counsel engaged in the cases will see that it has been almost impossible for us to give any full consideration to the arguments which have been presented, and which were the result of a great deal of labor and research, and upon one branch of the subject —at least upon one of the most interesting questions that can come before the court—I mean the extent to which a court of equity can interfere by injunction to restrain the collection of taxes. The authorities are by no means uniform, are not very specific, and

seem to be in a state of fluctuation, and for any satisfactory judgment, and I might also say any intelligent judgment, they need a more thorough examination than our opportunities, or at least my time, in this court will permit; and my Brother DILLON desires that, as far as we can dispose of the cases, it shall be done before I leave the court, as he adjourned the cases practically to this court, with the view of getting the benefit of the full bench.

The main question in these cases, the difficult one, or the one which has been argued most at length, is, as I said before, the extent and nature of the jurisdiction of a court of chancery to enjoin the collection of taxes.

Now, apart from any authorities on the subject, looking at it as a question open to all the general considerations which should govern it, it might seem that those principles should be different as they are applied to different classes of taxes. It certainly cannot be denied that these various forms of municipal taxation by communities and cities and townships are exercised by a class of men who are not very familiar with the laws under which they proceed; and, to say the least of it, are not always observant of the rights of all parties interested in taxation, and who do not always use the proceeds of that taxation, either in the wisest manner, or in the manner in which the law peremptorily declares they shall be used; and so for these reasons it would seem, looking at the general nature of the subject, that it ought to be within the power of some judicial body to arrest any unlawful proceeding of theirs in the levying and collection of taxes, and that no great harm would come in dealing with such bodies as they are, in subjecting them occasionally to the wholesome restraint of judicial proceedings, when they are levying their taxes upon the people and disbursing them in ways which are not warranted by law.

But looking at the question of a state levying her taxes and collecting her revenue, a state which, according to the old form of expression, has been called a sovereign—a body which, if you refer to it as a corporate body or as an organized system of civil government, is wholly dependent upon taxation for its existence—daily existence—and which, unless the taxation is paid, must fall to pieces and dissolve civil society, why, one must pause and hesitate whether an ordinary court shall interpose and say, none of these taxes shall be paid; and yet I do not find in any of the authorities which have been read here, that any such distinction has been made. The right of the court to interpose has been based upon the same principle so far as judicial authority cited here is concerned. But it is impossible that sitting here as a court of the United States, in some sense, not exactly a court of the state, certainly not a court created by authority of the state—a jurisdiction that in former times,

exercising its power upon state rights, has always been looked upon with jealousy, it seems proper that, as judges of this court, we should proceed with very great caution and hesitation, when attempting to lay our hands on the authorities the state has provided for the collection of its revenue. I confess I have always had a very strong opinion that the circumstances under which a court of equity ought to interfere to restrain the collection of any taxes are very limited, but the cases cited on the argument show that the courts have gone further than I had supposed.

It is certainly true that a great many of the best courts in the Union have held the right to interfere in various classes of cases in regard to protecting the citizen against unlawful taxation. Now that is about as far as I can go on that subject. We want, before making up our minds decisively on any of these subjects, to look at the authorities and examine them very carefully, and when it is decided at all to decide it in a manner which we will be content to abide by, until directed by superior authority to do otherwise.

The result of this consideration is, we are not disposed to decide that branch of the case. But we are all united on another proposition which is essentially connected with this case, and which enables us, if not to make a final decree, to make a very important order at this term of court, and that is that we adopt this rule: That whenever a party comes into this court to ask the court to enjoin the collection of a tax or a part of a tax, if there is any part he admits to be due, or which the court can see upon the statement in the bill ought to be paid, there must be an allegation in the bill conforming to the fact that they have paid, or that they have tendered it; and it is not a sufficient allegation that they are willing to pay or that they will pay it into court, because the state is not to be stayed in its revenue, which is admitted to be due, in that way; and a party claiming that he will not pay his tax, or any portion of it, cannot screen himself during a course of long litigation from paying that which must be paid, and everybody can see must be paid, by setting up a contest over that which is doubtful, and which may or may not eventually, be necessary to be paid.

The result of those observations is, that so far as these cases are concerned in all of them we shall enter an order assuming that the reports of amounts for the roads to be assessed, made by the various county courts shall be assumed for the present, at least, as the lowest assessment which can be made, and we will make an order giving reasonable time to these plaintiffs or petitioners to go and pay the state and counties the tax assessed on that valuation, and the injunction will remain until that time has elapsed. But if the various railroads shall come up

within that time, or at the end of it, and show to the court that they have paid that proportion of their taxes, this injunction will stand for the remainder until final hearing; and if at the end of that time no such evidence is brought to this court as to any railroad, the whole injunction will be dissolved, and it can seek such other remedy as it chooses. The bill remains, but the injunction will be dissolved, if it is found it does not pay as required.

2. As to the Missouri Pacific Company. There is another branch of the subject upon which I ought, perhaps, to say something, but I do not feel inclined to say much. The first is the specific claim set up by the Missouri Pacific Railroad to a total exemption from all county taxation; and, second, to exemption from the present tax, because they claim that the 12th section of the act of December 25, 1852, is a contract as to the mode of levying taxes, which has been violated by the manner in which the taxation is levied on it. In regard, first, to the exemption from county taxation. I have no question at all that there is such exemption, and that the statute meant to say there is an exemption of this Missouri Railroad from all taxation until the road is completed and a dividend declared, or until two years after the road is completed. This, I think, is the intention of that section. Then all powers of rightful taxation revert to the legislature, and after that time has arrived the property becomes liable to county taxation as well as all other taxes. As to the other branch of the subject, I have a little more doubt. But my opinion is, and in that my Brother DILLON concurs, that the provision that the tax shall be assessed by the auditor, upon the report of the president of the board, is merely a provisional mode for the first taxation, because there was no mode existing at that time by which railroad property could be taxed, or was taxed. It was simply a provisional mode to be carried out and executed until that period should come, and it leaves the whole subject of taxation of railroads to the same general principles that govern all taxation. (This view was subsequently sustained by the supreme court. Bailey v. New York Cent. & H. R. R. Co., 22 Wall. [89 U. S. 604].)

That disposes of the special claim of the Missouri Pacific Railroad.

3. As to the Atlantic and Pacific Company. The Atlantic and Pacific Company maintain in the first place that they have all the rights and privileges of exemption from taxation which the said 12th section of the act of 1852 conferred on the Missouri Pacific, of which it was part at the time, and that they had not completed their road within the time which allows the tax to be levied at all. On that part of the subject I have only to say that the case of the Iron Mountain Railroad (Trask v. Maguire, 18 Wall. [85 U. S.] 391), decided by the supreme court of the

United States at the last term, settles that question against the Atlantic and Pacific Railway. It settles this, that when the state of Missouri, after all those various sales, resumed the franchise and property of the railroad it held them subject to the constitutional provision which forbids any future exemption from taxation. That disposes of this case as far as the courts have gone into the subject, and as far as we propose to go at this time.

NOTE. Subsequently, upon agreement of counsel as to amount to be paid under the foregoing views, the court made an order applicable to each of the railroad companies concerned, by which some sixty per cent. of the amounts assessed against each of them was to be paid by the second of January next, or the bills would stand dismissed. Ordered accordingly.

[NOTE. The injunctions which had been granted in these cases (see Case No. 732) were upon final hearing modified so as to permit the collection of the tax to an amount not in excess of that fixed by the various county courts through which the roads run. Case No. 10,845.]